IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

COREY EVAN ROBESON,
                    Movant,

v.                                                    No.      3:20-CV-00385-D-BK
                                                               (3:18-CR-0006-D-52)

UNITED STATES OF AMERICA,
                    Respondent.

## RESPONSE TO MOTION UNDER 28 U.S.C. § 2255

Respectfully submitted,

PRERAK SHAH
ACTING UNITED STATES ATTORNEY

*/s/ Kristina M. Williams*
Kristina M. Williams
Assistant United States Attorney
Texas State Bar No. 24078303
1100 Commerce Street, Third Floor
Dallas, Texas 75242-1699
Telephone: 214-659-8814
kristina.williams@usdoj.gov

## <u>TABLE OF CONTENTS</u>

**Page**

TABLE OF AUTHORITIES.................................................................................iv

RESPONSE TO MOTION UNDER 28 U.S.C. § 2255 ....................................... 1

BACKGROUND ............................................................................................... 1

    1.    Robeson possesses with the intent to distribute almost nine kilograms of "Pink," a synthetic form of heroin. .............................................................. 1

    2.    Robeson pleads guilty to possessing with the intent to distribute a controlled substance. ...................................................................................2

    3.    The Court sentences Robeson to 210 months' imprisonment.......................4

    4.    The Fifth Circuit dismisses Robeson's appeal, and Robeson files a Section 2255 motion.................................................................................................6

STATEMENT OF THE ISSUES ......................................................................... 6

ARGUMENT AND AUTHORITIES ...................................................................7

    1.    The Court should dismiss Robeson's new claims as time-barred. (Robeson's New Grounds II and III (CV No. 12 at 5-8).) ........................... 9

    2.    Robeson fails to show that he received ineffective assistance of counsel. (Robeson's Grounds One-Three and New Grounds II and III.)..................11

        A.    Representation during the plea process.  (Robeson's New Grounds II and III.)............................................................................................11

            i.    Robeson voluntarily and knowingly pled guilty, and he produces no evidence with sufficient indicia of reliability suggesting otherwise. ..........................................................12

            ii.    The Court should reject Robeson's allegation that his counsel was ineffective in calculating and advising him as to his sentencing exposure. ..........................................................14

        B.    Withdrawal of plea.  (Robeson's New Ground III.)........................18

        C.    Investigation and discovery.  (Robeson's Grounds One-Three)......20

**Page**

      D.     PSR objections.  (Robeson's Ground One.).....................................21

   3.     Robeson's prosecutorial misconduct claim is procedurally barred and meritless.  (Robeson's Ground Four.) ........................................................22

   4.     Robeson fails to establish judicial bias.  (Robeson's Ground Five.) ..........24

CONCLUSION ...........................................................................................................26

CERTIFICATE OF SERVICE...........................................................................................26

## <u>TABLE OF AUTHORITIES</u>

**Federal Cases**                                                                            **Page(s)**

*Blackledge v. Allison*, 431 U.S. 63 (1977) ............................................................. 13, 15, 17

*Clay v. United States*, 537 U.S. 522 (2003) .................................................................. 6, 7

*Cullen v. Pinholster*, 563 U.S. 170 (2011) ....................................................................... 8

*Darden v. Wainright*, 477 U.S. 168 (1986) ................................................................ 23, 24

*DeVille v. Whitley*, 21 F.3d 654 (5th Cir. 1994) ............................................................. 12

*Dodd v. United States*, 545 U.S. 353 (2005) .................................................................... 9

*FTC v. Cement Institute*, 333 U.S. 683 (1948) .............................................................. 24

*Hill v. Lockhart*, 474 U.S. 52 (1985) ............................................................................ 16

*Kelley v. United States*, No. 3:18-CV-97-D-BH, 2020 WL 8262814
      (N.D. Tex. Dec. 23, 2020) ...................................................................................... 20

*Lee v. United States*, 137 S. Ct. 1958 (2017) ........................................................... 16, 18

*Liteky v. United States*, 510 U.S. 540 (1994) ................................................................ 25

*Massaro v. United States*, 538 U.S. 500 (2003) ............................................................... 8

*Matthew v. Johnson*, 201 F.3d 353 (5th Cir. 2000) ........................................................ 12

*Mayle v. Felix*, 545 U.S. 644 (2005) ......................................................................... 10, 11

*Miller v. Johnson*, 200 F.3d 274 (5th Cir. 2000) .............................................. 8, 14, 15, 22

*Padilla v. Kentucky*, 559 U.S. 356 (2010) ....................................................................... 8

*Robinson v. Quarterman*, 537 F.3d 466 (5th Cir. 2008) ................................................. 24

*Strickland v. Washington*, 466 U.S. 668 (1984) ..................................................... 8, 14, 22

*United States v. Addonizio*, 442 U.S. 178 (1979) ............................................................. 8

*United States v. Amaya*, 111 F.3d 386 (5th Cir. 1997) .................................................... 12

*United States v. Carr*, 740 F.2d 339 (5th Cir. 1984) ....................................................... 19

iv

**Federal Cases, continued**                                                    **Page(s)**

*United States v. Cervantes*, 132 F.3d 1106 (5th Cir. 1998) ........................ 13, 14

*United States v. Crouch*, 896 F.2d 78 (5th Cir. 1990)........................................ 24

*United States v. Daniel*, 866 F.2d 749 (5th Cir. 1989)....................................... 19

*United States v. Edwards*, 442 F.3d 258 (5th Cir. 2006) ..................................... 9

*United States v. Frady*, 456 U.S. 152 (1982) ....................................................... 8

*United States v. Gonzalez*, 592 F.3d 675 (5th Cir. 2009)................................... 10

*United States v. Green*, 882 F.2d 999 (5th Cir. 1989)....................................... 20

*United States v. Hernandez*, 234 F.3d 252 (5th Cir. 2000) ............................... 12

*United States v. Hughes*, 635 F.2d 449 (5th Cir. Unit B 1981)......................... 25

*United States v. Kearby*, 943 F.3d 969 (5th Cir. 2019)...................................... 25

*United States v. Lampazianie*, 251 F.3d 519 (5th Cir. 2001) ............................ 19

*United States v. Malone*, 828 F.3d 321 (5th Cir. 2016) ..................................... 25

*United States v. Masat*, 8 F.3d 20 (5th Cir. 1993)............................................. 25

*United States v. McDaniels*, 907 F.3d 366 (5th Cir. 2018) ............................. 9, 13

*United States v. Palmer*, 456 F.3d 484 (5th Cir. 2006)................................... 13, 15

*United States v. Pineda*, 988 F.2d 22 (5th Cir. 1993) .................................... 21, 23

*United States v. Placente*, 81 F.3d 555 (5th Cir. 1996)........................................ 7

*United States v. Saenz*, 282 F.3d 354 (5th Cir. 2002) ....................................... 10

*United States v. Scott*, 857 F.3d 241 (5th Cir. 2017)......................................... 12

*United States v. Shaid*, 937 F.2d 228 (5th Cir. 1991)......................................... 22

*United States v. Stewart*, 207 F.3d 750 (5th Cir. 2000) ...................................... 9

*United States v. Thompson*, 709 F. App'x 758 (5th Cir. 2017) .......................... 25

*United States v. Valdez*, 973 F.3d 396 (5th Cir. 2020).................................passim

**Federal Cases, continued**                                                  **Page(s)**

*United States v. Williams*, 116 F. App'x 539 (5th Cir. 2004) ...........................................12

*Wade v. Davis*, No. 3:16-CV-0533-N-BK, 2017 WL 3328121
      (N.D. Tex. July 17, 2017)..............................................................................11

**Federal Statutes and Rules**

21 U.S.C. § 841(b)(1)(C) ..........................................................................................3

28 U.S.C. § 2255(f)(1) ..............................................................................................9

Fed. R. Civ. P. 15(c)(1)(A)-(C) ...............................................................................10

## RESPONSE TO MOTION UNDER 28 U.S.C. § 2255

The government opposes Corey Robeson's 28 U.S.C. § 2255 motion because his claims are conclusory, procedurally defaulted, belied by the record in this case, meritless, or some combination thereof.

## BACKGROUND

1.     **Robeson possesses with the intent to distribute almost nine kilograms of "Pink," a synthetic form of heroin.**

In 2017, law enforcement began investigating a narcotics-distribution conspiracy involving Robeson and others.  (PSR ¶¶ 14, 17.)[1]  Agents identified over 57 individuals who purchased and distributed narcotics throughout the North Texas area.  (*Id.* ¶ 14.)  Numerous members of this conspiracy were members of violent gangs.  (*Id.* ¶ 19.)

Robeson was a member of the Aryan Circle and distributed "Pink," a synthetic form of heroin, also known as U-47700.  (*Id.* ¶¶ 20, 21.)  Robeson and his girlfriend, Boucher, received Pink from an unindicted coconspirator (UCC1) and distributed it.  (*Id.*)  Robeson was also the source of supply for codefendant Geffert.  (*Id.* ¶ 20.)  Between March 2017 and March 2018, Robeson received 1,000 capsules of Pink every two to three days.  (*Id.* ¶ 21.)

In February 2017, local and state law enforcement searched Robeson's residence.  (*Id.* ¶¶ 22, 23.)  Officers saw Geffert and Boucher loading several bags into two pickup

---

[1] "CV No. __" refers to the docket number of this Section 2255 action.  "CR No. __" refers to the docket number of the underlying criminal proceeding, *United States v. Lane et al.*, 3:18-cr-6-D-52 (N.D. Tex.).  "PSR" refers to Robeson's presentence report, which is docketed in his criminal case at docket number 705-1.  "PSR Add." refers to the addendum to Robeson's presentence report, which is docketed in his criminal case at docket number 775-1.

trucks—one F250 and one Chevrolet.  (*Id.* ¶ 23.)  Robeson exited the residence and entered the Chevrolet, while Geffert entered the F250.  (*Id.*)  Officers later conducted a traffic stop on both vehicles.  (*Id.*)  Robeson dropped handfuls of white capsules—9.6 grams of Pink—out of his truck.  (*Id.*; CR No. 508 at 2.)  Officers also seized 0.1 gram of Pink and $6,425 from Robeson's truck, and Robeson told officers that he had ingested a "substantial portion of" Pink "to avoid detection by law enforcement."  (PSR ¶¶ 23, 25; CR No. 508 at 2.)  From Geffert's truck, officers seized 29.2 grams of Pink, marijuana, other pills, a drug ledger, multiple jars with marijuana residue, and a digital scale.  (*Id.* ¶ 23.)

Meanwhile, officers searched the residence, where they found 45.36 grams of Pink, other pills, a drug ledger, silver knuckles, and $848.  (*Id.* ¶ 24.)  The drug ledgers confirmed that Robeson, Geffert, and Boucher were distributing Pink.  (*Id.*)

In April 2017, local law enforcement conducted another traffic stop on Robeson after they observed him throwing a black pouch out of the window.  (*Id.* ¶ 26.)  Deputies seized the pouch and found numerous pills and powder residue inside of it.  (*Id.*)

In April 2018, state law enforcement searched a room that Robeson and Boucher were renting.  (*Id.* ¶ 27.)  Agents seized marijuana, pills, and a pistol.  (*Id.* ¶¶ 27, 28.)

## 2.     Robeson pleads guilty to possessing with the intent to distribute a controlled substance.

With the assistance of counsel, John Nickols, and pursuant to a written plea agreement, Robeson pled guilty to a superseding indictment charging a single count of possession with the intent to distribute a controlled substance.  (CR No. 509 at 1.)  That

offense carried no mandatory minimum sentence and a statutory maximum sentence of 20 years. *See* 21 U.S.C. § 841(b)(1)(C).

Robeson affirmed that his written plea agreement was "a complete statement of the parties' agreement." (CR No. 509 at 7.) He also affirmed his understanding that "no one can predict with certainty the outcome of the Court's consideration of the guidelines in this case" and that—irrespective of any prediction by counsel—"the actual sentence imposed . . . is solely in the discretion of the Court." (*Id.* at 3.) He admitted that he was entering his plea freely and voluntarily and not because of threats or extraneous promises. (*Id.* at 6.) He agreed that "[t]here have been no guarantees or promises from anyone as to what sentence the Court will impose." (*Id.*) Finally, he averred that he "ha[d] concluded that it [was] in his best interest to enter into th[e] plea agreement, and all of its terms, rather than to proceed to trial." (*Id.* at 7.) Robeson's plea agreement also included an appellate-rights waiver. (*Id.* at 6.)

Robeson's written plea agreement matched his sworn testimony at his rearraignment hearing. (*See generally* CR No. 1030.) While under oath, he told the Court that he fully understood the charges against him and admitted that he committed the elements of the offense to which he pled guilty. (*Id.* at 6, 15-16.) He also acknowledged that the guidelines are advisory and that no one, his counsel included, could predict with certainty the sentence that the Court would impose. (*See id.* at 11-13.) He swore that he reached the decision to plead guilty of his own free will and that no one had threatened him or made him any promise not reflected in the plea agreement. (*Id.* at 7.) He also affirmed that he was voluntarily waiving the right to appeal his conviction or

3

sentence.  (*Id.* at 13.)  Finally, he averred that he was satisfied with his counsel's representation in this case.  (*Id.* at 6.)  The Court found that his plea was knowing, voluntary, and supported by an independent basis in fact.  (*Id.* at 16.)

### 3.    The Court sentences Robeson to 210 months' imprisonment.

The PSR held Robeson accountable for the 8.9 kilograms of Pink that he possessed and distributed (as attributed to him by UCC1), which the PSR explained was equivalent to 4,450 kilograms of marijuana equivalent.  (PSR ¶ 32.)  The PSR did not hold him accountable for the Pink seized from him or his vehicle to avoid double counting.  (*Id.*)  The PSR assigned him a total offense level of 33, which comprised a base offense level of 32 for an offense involving between 3,000 and 4,450 kilograms of marijuana equivalent; a two-level dangerous-weapon enhancement; a two-level maintaining-premises enhancement; and three-level acceptance-of-responsibility reduction.  (*Id.* ¶¶ 41-51.)  Robeson's criminal-history category was V.  (*Id.* ¶ 62.)  This yielded an advisory guideline range of 210 to 240 months' imprisonment.  (*Id.* ¶ 120.)

Nickols objected to the PSR's drug-quantity calculation, contending that UCC1's statement that Robeson received and sold 1,000 capsules of Pink every two to three days for one year lacked adequate evidentiary basis, and that Robeson's indigent status was inconsistent with the over $4 million Robeson would have profited had he sold that many capsules of Pink.  (CR No. 753.)  The probation officer rejected his objections.  (PSR Add.)  Nickols filed a sentencing memorandum, seeking a below-guidelines sentence for Robeson because Pink was recently deemed a controlled substance.  (CR No. 754.)

At the sentencing hearing, Nickols persisted in his objections.  (CR No. 1033 at 3-5, 26-27.)  The Court heard lead case Agent Keith Green's testimony.  (*Id.* at 7-16.) Agent Green testified that several pieces of evidence supported the drug-quantity calculation: (1) UCC1's statement that he delivered 1,000 capsules to Robeson every two to three days, which amounted to 6,000 to 9,350 grams of Pink; (2) Geffert's statement that Robeson sold between $12,000 and $13,000 worth of capsules per day for about a year, which amounted to 480 capsules a day; (3) Robeson told agents that he swallowed some of the Pink capsules before agents executed the warrant at his residence; (4) he was arrested with over $6,000 in cash and owned several vehicles, evidencing his access to a large amount of cash; (5) Robeson and his coconspirators appeared to be moving out of the house, suggesting that he was aware law enforcement was looking for him; and (6) he threw a significant number of pills out his window when law enforcement attempted to conduct a traffic stop.  (*Id.* at 7-13.)  Nickols cross-examined Green, focusing on Robeson's profit from drug sales and the fact that law enforcement neither attempted a controlled buy from or sale to Robeson nor interviewed his customers.  (*Id.* at 17-26.)

The Court overruled the objection and adopted the PSR and Addendum's factual findings and conclusions, including the guideline range of 210 to 240 months' imprisonment.  (*Id.* at 27-28.)  Before the Court announced its sentence, it heard testimony from Robeson and his mother about Robeson's drug addiction and his close relationship with his son.  (*Id.* at 28-35.)  The Court ultimately denied Nickols's motion for a below-guidelines sentence and sentenced Robeson to a bottom-of-the guidelines sentence of 210 months' imprisonment.  (*Id.* at 36.)

4.    **The Fifth Circuit dismisses Robeson's appeal, and Robeson files a Section 2255 motion.**

Robeson, through his counsel, Nickols, appealed and challenged the PSR's drug-quantity calculation.  *See* Appellant's Brief, *United States v. Robeson*, No. 18-11421 (5th Cir. filed March 27, 2019).  On May 23, 2019, the Fifth Circuit dismissed Robeson's appeal as barred by his appeal waiver.  Order, *United States v. Robeson*, No. 18-11421 (5th Cir. May 23, 2019).

Robeson did not file a petition for writ of certiorari, and thus his judgment became final 90 days after May 23, 2019—or August 21, 2019.  *See Clay v. United States*, 537 U.S. 522, 532 (2003).  Robeson mailed a timely Section 2255 motion on February 10, 2020.  (CV No. 1 at 14.)[2]  However, he failed to comply with this Court's order to file a brief in support of his motion, and the Court dismissed his motion.  (CV No. 10.)  On November 21, 2020, Robeson mailed his amended Section 2255 motion.  (CV No. 12 at 8.)  The Court withdrew its previous order and ordered that the government respond to Robeson's amended Section 2255 motion.  (CV No. 15 at 1.)[3]

## STATEMENT OF THE ISSUES

In his original Section 2255 motion, (CV No. 1), Robeson raised the following issues:

- Nickols failed to investigate evidence "in all stages" of Robeson's criminal proceedings, (*id.* at 4 (Robeson's Ground One));

---

[2] Robeson did not date his motion; however, it is postmarked February 10, 2020.  (CV No. 1 at 13-14.)

[3] The Court "[did] not express any opinion as to the timeliness . . . of any claims pled" in Robeson's amended Section 2255 motion.  (CV No. 14.)

- Nickols was negligent in contesting facts used to determine the length of Robeson's sentence, (*id.*);

- Nickols failed to obtain discovery that contained evidence that determined Robeson's sentence, (*id.* at 5 (Robeson's Ground Two));

- Nickols entered into a "standard stipulated discovery agreement" without Robeson's consent, which violated his due process rights, (*id.* at 7 (Robeson's Ground Three));

- The government withheld exculpatory and relevant evidence and testimony, (*id.* at 8 (Robeson's Ground Four)); and

- The Court showed clear bias against Robeson in overruling Nickols's sentencing objection, (*id.* at 10 (Robeson's Ground Five)).

Robeson's amended Section 2255 motion adds additional arguments in support of some of his claims.  (*See* CV No. 12 at 3-5.)  He also adds new claims for relief:

- Nickols was ineffective during the plea process in negotiating the plea and advising Robeson to plead guilty without reviewing discovery, (*id.* at 5-7 (Robeson's New Ground II)); and

- Nickols was ineffective for failing to file a motion to withdraw Robeson's plea, (*id.* at 7-8 (Robeson's New Ground III)).

## **ARGUMENT AND AUTHORITIES**

### **Standard of Review**

Under 28 U.S.C. § 2255, a prisoner may move the convicting court to vacate, set aside, or correct his conviction or sentence.  It provides four grounds: "(1) the sentence was imposed in violation of the Constitution or laws of the United States; (2) the court was without jurisdiction to impose the sentence; (3) the sentence exceeds the statutory maximum sentence; or (4) the sentence is 'otherwise subject to collateral attack.'" *United States v. Placente*, 81 F.3d 555, 558 (5th Cir. 1996) (citation omitted).

"It has, of course, long been settled law that an error that may justify reversal on direct appeal will not necessarily support a collateral attack on a final judgment." *United States v. Addonizio*, 442 U.S. 178, 184 (1979).  After conviction and the exhaustion or waiver of all appeals, the Court is "entitled to presume" that the prisoner "stands fairly and finally convicted." *United States v. Frady*, 456 U.S. 152, 164 (1982).

Ineffective assistance of counsel claims are constitutional claims recognized under Section 2255.  *Massaro v. United States*, 538 U.S. 500, 504 (2003).  Such claims require the prisoner to prove that his attorney's performance was constitutionally deficient and that he suffered actual prejudice as a result.  *Strickland v. Washington*, 466 U.S. 668, 687 (1984).  First, the movant must prove that his counsel's performance was deficient by identifying specific acts or omissions that were not the result of reasonable professional judgment.  *Id.* at 690.  Second, the movant must prove that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Id.* at 694.  "That requires a substantial, not just conceivable, likelihood of a different result."  *Cullen v. Pinholster*, 563 U.S. 170, 189 (2011) (internal quotation marks and citation omitted).  In the context of a guilty plea, "that means there is a reasonable probability that the defendant would not have pleaded guilty and would have insisted on going to trial."  *United States v. Valdez*, 973 F.3d 396, 403 (5th Cir. 2020) (internal quotation marks and citation omitted).

Simply making "conclusory allegations" of deficient performance and prejudice is insufficient to meet the *Strickland* test.  *Miller v. Johnson*, 200 F.3d 274, 282 (5th Cir. 2000).  "Surmounting *Strickland*'s high bar is never an easy task."  *Padilla v. Kentucky*,

559 U.S. 356, 371 (2010).  The claim fails if the prisoner does not satisfy either the deficient-performance or prejudice prongs.  *United States v. Stewart*, 207 F.3d 750, 751 (5th Cir. 2000).  The reviewing court need not address both components if there is an insufficient showing on one.  *Id.*

Section 2255 motions do not automatically require a hearing.  *See United States v. Edwards*, 442 F.3d 258, 264 (5th Cir. 2006).  No evidentiary hearing is needed if the movant's showing consists of mere "conclusory allegations," "or is otherwise inconsistent with the bulk of his conduct."  *United States v. McDaniels*, 907 F.3d 366, 370 (5th Cir. 2018).

## Discussion

**1.    The Court should dismiss Robeson's new claims as time-barred.  (Robeson's New Grounds II and III (CV No. 12 at 5-8).)**

Section 2255 establishes a one-year limitation period within which a federal prisoner may file a motion to vacate, set aside, or correct his sentence.  *Dodd v. United States*, 545 U.S. 353, 356 (2005).  It states: "A 1-year period of limitation shall apply to a motion under this section.  The limitation period shall run from . . . the date on which the judgment of conviction becomes final."  28 U.S.C. § 2255(f)(1).

Robeson's judgment became final on August 21, 2019.  Although Robeson submitted his original Section 2255 motion before his statute of limitations expired, (*see* CV No. 1 at 14), he did not mail his amended motion until November 21, 2010, (*see* CV No. 12 at 14)—three months after his statute-of-limitations period expired.  Therefore, the claims that Robeson presents for the first time in his amended motion are time-barred,

9

unless they relate back to the claims in Section 2255 motion. *See Mayle v. Felix*, 545 U.S. 644, 649 (2005) (holding that the timeliness of petitioner's amended petition, which was filed after the one-year limitations period expired, depends on whether the amended petition relates back to the original, timely filed petition).

Rule 15 of the Federal Rules of Civil Procedure provides that amendments filed after the expiration of the limitations period relate back to the date of the original, timely filed pleading when the claim in the amended pleading arises out of the same "conduct, transaction, or occurrence" as that set forth in the original pleading. Fed. R. Civ. P. 15(c)(1)(A)-(C); *see also United States v. Saenz*, 282 F.3d 354, 356 (5th Cir. 2002) (applying Rule 15 to Section 2255 proceeding). The Supreme Court has clarified that habeas claims do not automatically arise out of the same occurrence for purposes of Rule 15 simply because they arise out of the same trial and conviction. *Mayle*, 545 U.S. at 650. Similarly, "[n]ew claims of ineffective assistance of counsel do not automatically relate back to prior ineffective-assistance claims simply because they violate the same constitutional provision." *United States v. Gonzalez*, 592 F.3d 675, 680 (5th Cir. 2009). Rather, to relate back to the claims in the original petition, the claims in the amended petition must depend on the same "common core of operative facts" as those in the original petition. *See Mayle*, 545 U.S. at 664. In other words, if the claims in a late-filed, amended petition assert "a new ground for relief supported by facts that differ in both time and type" from those set forth in the original petition, they do not relate back to the original petition and are time-barred. *See Gonzalez*, 592 F.3d at 680.

Robeson attempts to raise two new claims in his late-filed amended motion, but neither of them relate back to his timely claims.  In his new claims, Robeson contends that Nickols was ineffective during the plea process—in negotiating the plea, advising Robeson to plead guilty, and failing to file a motion to withdraw the plea.  (CV No. 12 at 5-8.)  Nowhere in Robeson's original motion did he raise facts or law to which this late claim could relate back.  Rather, in his motion, Robeson argues that Nickols was ineffective because he failed to investigate evidence, obtain discovery, and contest facts relevant to sentencing, and because he entered into a discovery agreement that violated Robeson's due process rights.  (CV No. 1 at 4, 5, 7.)  Robeson's new arguments that his counsel should have represented him differently during the plea process and moved to withdraw his plea do not relate back to any claim in his timely motion.  *See, e.g.*, *Wade v. Davis*, No. 3:16-CV-0533-N-BK, 2017 WL 3328121, at *5-6 (N.D. Tex. July 17, 2017) (citing *Mayle*, 545 U.S. at 664) (Toliver, J.), *rec. adopted* 2017 WL 3314219 (N.D. Tex. Aug. 3, 2017).  Thus, this Court should dismiss these claims as time-barred.  In any event, Robeson's new claims fail on the merits, as explained *infra* pp. 11-25.

**2.    Robeson fails to show that he received ineffective assistance of counsel. (Robeson's Grounds One-Three and New Grounds II and III.)**

**A.    Representation during the plea process.  (Robeson's New Grounds II and III.)**

In short, Robeson contends that Nickols was ineffective during the plea process in advising Robeson to plead guilty without discovering that his guideline range would be near the statutory maximum—not the 70 to 87 months range that Nickols allegedly predicted.  (CV No. 12 at 5-7.)  Robeson claims that, had he known of his sentencing

11

exposure, he would not have pled guilty and would have proceeded to trial. (*Id.* at 6-7.) However, his claims are belied by the record, and in any event, he cannot show prejudice.

> ### i.     Robeson voluntarily and knowingly pled guilty, and he produces no evidence with sufficient indicia of reliability suggesting otherwise.

Robeson suggests that his guilty plea was unknowing because it was founded on a mistaken belief about his sentencing exposure. (*See id.* at 6-7.)  However, the record shows that Robeson's guilty plea was knowing, voluntary, and intelligent.

"A guilty plea will be upheld on habeas review if entered into knowingly, voluntarily, and intelligently." *United States v. Hernandez*, 234 F.3d 252, 254 (5th Cir. 2000) (internal quotation marks and citation omitted).  "If the defendant is aware of the potential maximum prison term and fine for the offense charged, but nevertheless pleads guilty, his plea is knowingly and intelligently entered." *United States v. Scott*, 857 F.3d 241, 245 (5th Cir. 2017).  A guilty plea is voluntary if it does not result from force, threats, improper promises, misrepresentations, or coercion. *See United States v. Amaya*, 111 F.3d 386, 389 (5th Cir. 1997).  This Court looks to "all of the relevant circumstances surrounding it." *Matthew v. Johnson*, 201 F.3d 353, 364-65 (5th Cir. 2000) (internal quotation marks and citation omitted).  Finally, the Fifth Circuit has held that a "conviction must be upheld if the plea was voluntary, even if counsel provided ineffective assistance." *United States v. Williams*, 116 F. App'x 539, 540 (5th Cir. 2004) (citing *DeVille v. Whitley*, 21 F.3d 654, 659 (5th Cir. 1994)).

Here, Robeson affirmed at his rearraignment hearing that (1) he understood the charge against him; (2) he understood the consequences of pleading guilty (including the

statutory maximum of 20 years' imprisonment); and (3) his plea was freely and voluntarily made.  (CR No. 1030 at 6-7, 11-16.)  Those sworn statements are entitled to a strong presumption of verity in this post-conviction proceeding.  *See Blackledge v. Allison*, 431 U.S. 63, 74 (1977) (reiterating that "[s]olemn declarations in open court carry a strong presumption of verity," forming a "formidable barrier in any subsequent collateral proceedings"); *United States v. Palmer*, 456 F.3d 484, 491 (5th Cir. 2006) (observing that plea colloquies are considered "solemn declarations in open court which carry a strong presumption of verity") (internal quotation marks and citation omitted).

A Section 2255 movant can overcome the presumption of verity assigned to his prior sworn statements only if he shows "(1) the exact terms of the alleged promise, (2) exactly when, where, and by whom the promise was made, and (3) the precise identity of an eyewitness to the promise."  *McDaniels*, 907 F.3d at 371 (citing *United States v. Cervantes*, 132 F.3d 1106, 1110 (5th Cir. 1998)).  If the movant presents "'independent indicia' of the likely merit of [his] allegations, typically in the form of one or more affidavits from reliable third parties,'" he is entitled to an evidentiary hearing on the issue. *McDaniels*, 907 F.3d at 370 (quoting *Cervantes*, 132 F.3d at 1110).  If the movant's "showing is inconsistent with the bulk of [his] conduct or otherwise fails to meet [his] burden of proof in the light of other evidence in the record, an evidentiary hearing is unnecessary."  *Cervantes*, 132 F.3d at 1110.

Robeson provides no such evidence here.  He states that Nickols erroneously predicted that his guidelines range would be 70 to 87 months' imprisonment, but he fails to provide affidavits from reliable third parties or the identity of an eyewitness to his

counsel's alleged promise.  (*See* CV No. 12 at 7.)  Because Robeson's post-hoc assertion that his plea was unknowing is unsupported by independent evidence and belied by the record, it must fail.

> ### ii.   The Court should reject Robeson's allegation that his counsel was ineffective in calculating and advising him as to his sentencing exposure.

Robeson alleges that Nickols was ineffective in failing to conduct discovery or file "discovery motions." (*Id.* at 6.)  According to Robeson, had Nickols reviewed discovery, he would have realized that Robeson's guideline range would be near the statutory maximum, instead of the 70 to 87 months range that Nickols supposedly predicted.  (*Id.*) However, Robeson's conclusory allegations fail to establish deficient performance, much less prejudice, and are belied by the record.

First, Robeson's conclusory statements that Nickols failed to conduct or review discovery or file "discovery motions" fall short of identifying specific acts or omissions that were not the result of reasonable professional judgment, as is required by *Strickland*. 466 U.S. at 690.  Robeson fails to identify exactly what evidence Nickols should have obtained, exactly what review of the evidence would have shown (beyond his general statement that it would have shown that Robeson would receive sentencing enhancements and his drug-quantity calculation), or exactly what "discovery motions" Nickols should have filed.  (CV No. 12 at 5-7.)  Robeson's claim is thus fatally conclusory, and the Court should deny him relief on this basis alone.  *Miller*, 200 F.3d at 282.

Second, Robeson's claim that he relied on Nickols's sentencing promises is belied by the record.  His affirmations in his written plea agreement and at his rearraignment

hearing refute his post-hoc assertion that his plea was induced by Nickols's alleged misadvice.  In his plea agreement, Robeson affirmed that "no one can predict with certainty the outcome of the Court's consideration of the guidelines in this case" and that—irrespective of any prediction by counsel—"the actual sentence imposed . . . is solely in the discretion of the Court."  (CR No. 509 at 3.)  He affirmed that his plea was freely and voluntarily made, and not the result of extraneous promises.  (*Id.* at 6.)  He agreed that "[t]here have been no guarantees or promises from anyone as to what sentence the Court will impose."  (*Id.*)  Finally, he averred that he "ha[d] concluded that it [was] in his best interest to enter into th[e] plea agreement . . . rather than to proceed to trial."  (*Id.* at 7.)

Then, at his rearraignment hearing, Robeson acknowledged understanding that the guidelines are advisory and that no one, his counsel included, could predict with certainty the sentence that the Court would impose.  (*See* CR No. 1030 at 11-13.)  He represented to the Court that he understood that he might receive a sentence of up to 20 years' imprisonment and that if he received a sentence more severe than he expected, he would still be bound by his guilty plea.  (*Id.* at 9-10, 14.)  He swore that no one had made him any promise in return for his guilty plea.  (*Id.* at 7.)  Finally, he averred that he was satisfied with his counsel's representation.  (*Id.* at 6.)  Robeson's's "[s]olemn declarations in open court carry a strong presumption of verity."  *Blackledge*, 431 U.S. at 74.  Because his post-hoc assertion that his counsel failed to properly advise him about pleading guilty is not corroborated by independent and reliable evidence, it must fail.  *See Palmer*, 456 F.3d at 491.

Robeson's claim also fails because he cannot show prejudice under *Strickland*. Because Robeson pled guilty, he must show a "reasonable probability" that he "would have insisted on going to trial" but for counsel's misadvice. *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). This inquiry "focuses on [Robeson's] decisionmaking." *Lee v. United States*, 137 S. Ct. 1958, 1966-67 (2017). The Fifth Circuit has reiterated that "courts should not upset a plea solely because of post hoc assertions from a defendant about how he would have pleaded but for his attorney's deficiencies. Judges should instead look to contemporaneous evidence to substantiate a defendant's expressed preferences." *Valdez*, 973 F.3d at 403 (internal citation and quotation marks omitted). A defendant's statements at his plea colloquy, wherein he confirms his understanding of his plea's consequences, "serve as evidence relevant to understanding his decision-making at the time." *Id.* at 405-06. Moreover, "factors relevant to determining whether a defendant would have gone to trial can also include the risks he would have faced at trial, his representations about his desire to retract his plea, and the district court's admonishments." *Id.* at 403 (internal citation and quotation marks omitted).

Applying these principles, the Court should reject Robeson's post-hoc attempt to show that he would have insisted on a trial. First, he asserts that "[h]ad [he] known his guideline range would be at or near the statutory maximum, he would have elected to proceed to trial." (CV No. 12 at 6-7.) However, Robeson's in-court statements to the contrary—that he understood that not even his counsel could predict his sentence, he might receive a sentence of 20 years' imprisonment, he would be bound by his plea regardless of his sentence, and he was giving up his right to a trial despite the uncertainty

16

as to his sentence—"carry a strong presumption of verity" and are "evidence relevant to understanding his decision-making at the time." *Compare Blackledge*, 431 U.S. at 74, *and Valdez,* 973 F.3d at 405-06, *with* (CR No. 1030 at 10-14.)

Second, the evidence against Robeson was overwhelming. "[D]efendants obviously weigh their prospects at trial when deciding whether to accept a plea." *Valdez,* 973 F.3d at 403 (internal quotation marks omitted). Robeson had almost no chance of acquittal at trial. The government would have put on copious evidence of Robeson's drug possession and distribution, including:

- UCC1's statement that he delivered 1,000 capsules to Robeson every two to three days, which amounted to 6,000 to 9,350 grams of Pink, a synthetic form of heroin;

- Geffert's statement that Robeson sold between $12,000 and $13,000 worth of capsules per day for a year, which amounted to 480 capsules a day;

- On March 10, 2017, Robeson threw a significant number of pills out of his window when law enforcement attempted to conduct a traffic stop;

- During the traffic stop, officers found 0.1 gram of Pink and $6,425 in cash in Robeson's truck, and they found 29.2 grams of Pink, marijuana, other pills, a drug ledger, and drug paraphernalia in Geffert's truck;

- The same day, agents executed a warrant at Robeson's residence and found 45.36 grams of Pink, marijuana, other pills, a drug ledger, $848 in cash, and silver knuckles;

- Robeson told agents that he swallowed some of the Pink pills before agents searched his residence;

- On April 12, 2017, officers conducted another traffic stop on Robeson, and they observed him throw a pouch containing numerous pills and powder residue out of the car window;

- On April 25, 2018, DPS agents searched the residence where Robeson was renting a room, and seized prescription narcotics, marijuana, and a pistol;

- Robeson and his coconspirators appeared to be moving out of their house, suggesting that he was aware law enforcement was looking for him; and

- Robeson had several vehicles in his name and was arrested with over $6,000, evidencing that he was involved in activity that dealt with a large amount of cash.

(CR No. 1033 at 7-16; PSR ¶¶ 20-28.)  The odds of acquittal were heavily against Robeson, and a "defendant facing such long odds will rarely be able to show prejudice from accepting a guilty plea." *Lee*, 137 S. Ct. at 1966.

In sum, the contemporaneous evidence overwhelms Robeson's post-hoc allegation that he would have insisted on a trial.  The facts demonstrate that he would not have proceeded to trial but-for his counsel's representations—likely because he could have faced the same—or a greater—sentence had he proceeded to trial.  *See Valdez,* 973 F.3d at 405-06.  Thus, there is no merit to Robeson's attempts to upset his guilty plea, and the Court should reject his claims.

### B.    Withdrawal of plea.  (Robeson's New Ground III.)

Robeson contends that his counsel was ineffective for failing to move to withdraw Robeson's plea after receiving the PSR, or, at a minimum, advising Robeson of his "right to withdraw the plea."  (CV No. 12 at 7-8.)  However, Robeson fails to demonstrate the requisite prejudice—proof that a motion to withdraw his plea would have succeeded.

Even if Nickols had informed Robeson that withdrawing his plea was possible and had filed a motion to withdraw the guilty plea, it is unlikely the motion would have been

granted.  Withdrawal of a plea of guilty is not a right, and the granting of such a motion rests within the sound discretion of the trial judge.  *See, e.g.*, *United States v. Daniel*, 866 F.2d 749, 751 (5th Cir. 1989).  The Fifth Circuit has defined seven factors that should be considered in determining whether to allow the withdrawal of a plea.  They are:

> 1) Whether the defendant has asserted his innocence;
>
> 2) Whether the Government would suffer prejudice;
>
> 3) Whether the defendant has delayed in filing his motion;
>
> 4) Whether withdrawal would substantially inconvenience the court;
>
> 5) Whether close assistance of counsel was present;
>
> 6) Whether the original plea was knowing and voluntary; and
>
> 7) Whether the withdrawal would waste judicial resources.

*United States v. Carr*, 740 F.2d 339, 343-344 (5th Cir. 1984).  None of these factors are dispositive, and the defendant bears the burden of establishing a "fair and just reason" for withdrawing a plea.  *United States v. Lampazianie*, 251 F.3d 519, 524 (5th Cir. 2001).

Here, Robeson has not shown that the *Carr* factors weigh in his favor.  Even now, Robeson does not claim that he is innocent of drug-trafficking.  (*See* CV Nos. 1, 12.)  And, presumably, Robeson would have wanted to file his motion to withdraw the plea as soon as the PSR was issued—on September 7, 2018—but that was over two months after his guilty plea was entered on July 5, 2018, and resulted only from his disappointment with the PSR's calculated guideline range.  (*Compare* CV No. 12 at 7-8, *with* CR Nos. 705-1, 1030.)  Further, Robeson benefited from the close assistance of counsel, as evidenced by Nickols's negotiation of a beneficial plea deal and Robeson's own

19

testimony that he was fully satisfied with counsel's representation.  (CR No. 509; CR No. 1030 at 6.)  Finally, Robeson has not demonstrated that his plea was unknowing or involuntary.  *See supra* pp. 12-14.  Robeson fails to satisfy his burden of showing a fair and just reason for the Court to allow him to withdraw his guilty plea, and accordingly, he cannot establish *Strickland* prejudice.  *See Kelley v. United States*, No. 3:18-CV-97-D-BH, 2020 WL 8262814, *7-8 (N.D. Tex. Dec. 23, 2020) (Ramirez, J.), *rec. adopted* 2021 WL 242971 (N.D. Tex. Jan. 25, 2021).

### C.     Investigation and discovery.  (Robeson's Grounds One-Three).

Robeson complains that Nickols failed to investigate evidence "in all stages of [Robeson's] criminal proceedings."  (CV No. 1 at 4.)  Robeson faults Nickols for not "obtain[ing] discovery [that] contained statements and evidence that directly determined [Robeson's] sentence."  (*Id.* at 5.)  Finally, Robeson claims that Nickols "entered into a standard stipulated discovery without [Robeson's] consent."  (*Id.* at 7.)  However, the Court should reject his claims because, even if they are not fatally conclusory, Robeson fails to show prejudice.

First, as a threshold matter, Robeson's claims are vague and conclusory.  "A defendant who alleges a failure to investigate on the part of his counsel must allege with specificity what the investigation would have revealed and how it would have altered the outcome of the trial."  *United States v. Green*, 882 F.2d 999, 1003 (5th Cir. 1989).  Robeson argues that Nickols should have conducted further investigation and discovery, but he fails to say exactly what this investigation or discovery would have revealed.  (*See* CV No. 1 at 5.)  Instead, he simply suggests that Nickols could have better predicted his

sentencing enhancements and drug-quantity calculation with more investigation and discovery.  (*See id.* at 4, 5; CV No. 12 at 5-7.)  Robeson's claims are thus fatally conclusory and the Court should deny him relief on this basis alone.  *See United States v. Pineda*, 988 F.2d 22, 23 (5th Cir. 1993) (reasoning that pro se litigants are required to provide sufficient facts in support of their claims, and even under the rule of liberal construction, "mere conclusory allegations on a critical issue are insufficient to raise a constitutional issue").

Second, notwithstanding the fatally conclusory nature of his claims, Robeson fails to show prejudice.  As shown *supra*, pp. 14-18, Robeson's post-hoc suggestion that he would have insisted on a trial had Nickols conducted further investigation or discovery and accurately advised him of his guidelines range is belied by the record.  Because he fails to establish prejudice, his claim fails.  *See Valdez*, 973 F.3d at 402-03 (in the context of a guilty plea, explaining that prejudice is established by showing that the defendant "would have insisted on going to trial").

### D.    PSR objections.  (Robeson's Ground One.)

Robeson argues that Nickols was ineffective in contesting "facts used to determine [his] sentence."  (CV No. 1 at 4.)  To the extent Robeson argues that Nickols should have challenged his drug-quantity calculation, Robeson ignores that Nickols raised this issue.  (CR No. 753; CR No. 1033 at 3-5, 17-27.)  To the extent that Robeson argues that Nickols should have presented these arguments differently, his decisions clearly fall within the realm of professional judgment.  Robeson fails to overcome the strong presumption that Nickols's conduct was within the "wide range of reasonable

professional assistance." *See Strickland*, 466 U.S. at 689.  Moreover, Robeson fails to

identify exactly what other facts Nickols should have challenged or the enhancements he

should have contested.  Robeson's conclusory allegations are entirely insufficient to meet

the *Strickland* test, and his claim should be denied.  *See Miller*, 200 F.3d at 282.

**3.      Robeson's prosecutorial misconduct claim is procedurally barred and meritless.  (Robeson's Ground Four.)**

Robeson argues that the government withheld exculpatory evidence, testimony,

and statements "which [fell] under Rule 16 and *Brady*."  (CV No. 1 at 8.)  He claims that

the government failed to disclose proffer statements made by confidential informants,

which were the basis for his drug-quantity calculation and sentencing enhancements.

(CV No. 12 at 3-4.)  He contends that this evidence was material to his potential

punishment, and, had he received this evidence and Nickols advised him of his resulting

sentencing exposure, he would not have pled guilty.  (*Id.* at 3-5.)  However, Robeson's

claim is procedurally barred and meritless.

"A defendant can challenge his conviction after it is presumed final only on issues

of constitutional or jurisdictional magnitude . . .  and may not raise an issue for the first

time on collateral review without showing both 'cause' for his procedural default, and

'actual prejudice' resulting from the error." *United States v. Shaid*, 937 F.2d 228, 232

(5th Cir. 1991).  Robeson's direct claim of prosecutorial misconduct is an issue that

should have been raised during his original criminal proceeding or on direct appeal.  It

was not.  While Robeson argues that he did not raise this issue on direct appeal because

he was unaware that evidence was allegedly withheld, (CV No. 1 at 8), he fails to show

actual prejudice because he cannot show that he would have succeeded in a prosecutorial misconduct claim.

Even if evidence were withheld, which the government denies, prosecutorial misconduct only rises to the level of a constitutional violation if the act "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Darden v. Wainright*, 477 U.S. 168, 181 (1986) (internal quotation marks and citation omitted). Robeson fails to meet this burden. He pled guilty to possession with the intent to distribute a controlled substance. (CR No. 509 at 1.) To the extent Robeson claims that his plea was unknowing or the result of his counsel's misadvice, caused by the government allegedly withholding evidence, that is belied by the record. *See supra* pp. 12-18.

Moreover, Robeson had ample opportunity—over two months between the PSR's filing and sentencing—to object to the PSR's description of his conduct and present evidence to contradict it. (CR Nos. 705-1, 1030.) Nickols challenged the PSR's drug-quantity calculation in written objections and at sentencing. (CR No. 753; CR No. 1033 at 3-5, 16-27.) In allocution, Robeson also denied "exploit[ing] other people's weaknesses or addictions to opioids at such a level that [he was] being accused of" and argued that he was not "deserving of such high guidelines." (CR No. 1033 at 34-35.) Having heard that argument, this Court imposed sentence of 210 months' imprisonment as "sufficient but not greater than necessary." (*Id.* at 36.) Robeson fails to show how receiving evidence supporting the PSR any earlier would have changed the outcome of

his sentencing or that its absence resulted in a denial of due process.  Thus, the Court can easily reject his prosecutorial-misconduct claim.

### 4.  Robeson fails to establish judicial bias.  (Robeson's Ground Five.)

Robeson contends that the judge who sentenced him—Judge Fitzwater—was biased against him.  (CV No. 1 at 10.)  He points to Judge Fitzwater overruling his counsel's objection to Agent Green's testimony (about UCC1's statement describing his distribution of Pink to Robeson) on the basis that hearsay rules do not apply at sentencing.  (*Id.*; *see also* CR No. 1033 at 8 (Court's ruling on Nickols's objection).)  He claims that this ruling permitted "newly discovered evidence" being used against him.  (CV No. 1 at 10.)  He seeks Judge Fitzwater's recusal from his Section 2255 motion.  (*Id.*)  However, Robeson defaulted his claim by failing to raise it on appeal, and in any event, he does not show that reassignment and resentencing are necessary.

Just as with Robeson's prosecutorial misconduct claim, he defaulted his judicial bias claim by failing to raise it on direct appeal.  Claims of judicial bias are clearly not jurisdictional and are generally not constitutional in nature.  *See Robinson v. Quarterman*, 537 F.3d 466, 474 (5th Cir. 2008) (noting that "most matters relating to judicial disqualification [do] not rise to a constitutional level") (citing *FTC v. Cement Institute*, 333 U.S. 683, 702 (1948)).  Although such claims may implicate the Due Process Clause, to reach constitutional level, the petitioner must show that the judicial bias constituted a fundamental defect resulting in complete miscarriage of justice.  *United States v. Crouch*, 896 F.2d 78, 81 (5th Cir. 1990).  Robeson has not made that showing.

The Fifth Circuit has explained that "[j]udicial opinions on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible." *United States v. Thompson*, 709 F. App'x 758, 765 (5th Cir. 2017) (citing *Liteky v. United States*, 510 U.S. 540, 555 (1994)).  Moreover, adverse rulings do not demonstrate judicial bias.  *United States v. Masat*, 8 F.3d 20, 20 n.1 (5th Cir. 1993).

Robeson's Section 2255 motion is void of facts to show bias.  All he alleges is that Judge Fitzwater overruled Nickols's hearsay objection to Agent Green testifying about UCC1 attributing drug quantity to Robeson—a decision well supported by Fifth Circuit precedent.  *Compare* (CV No. 1 at 10), *with United States v. Kearby*, 943 F.3d 969, 974 (5th Cir. 2019) (citing *United States v. Malone*, 828 F.3d 321, 337 (5th Cir. 2016)) ("If uncorroborated hearsay is sufficiently reliable, a district court may rely on it in making sentencing findings.")  Moreover, that Judge Fitzwater ultimately sentenced Robeson at the low end of his guidelines range evidences his ability to render a fair judgment against Robeson, (CR No. 1033 at 36), and Robeson fails to show otherwise.

Finally, for all these reasons, the Court should deny Robeson's request for an evidentiary hearing.  (*See* CV No. 12 at 8.)  Where, as here, "the files and records of a case make manifest the lack of merit of a section 2255 claim, the trial court is not required to hold an evidentiary hearing."  *See United States v. Hughes*, 635 F.2d 449, 451 (5th Cir. Unit B 1981).

## CONCLUSION

The Court should deny the motion.

Respectfully submitted,

PRERAK SHAH
ACTING UNITED STATES ATTORNEY

*/s/ Kristina M. Williams*
Kristina M. Williams
Assistant United States Attorney
Texas State Bar No. 24078303
1100 Commerce Street, Third Floor
Dallas, Texas 75242-1699
Telephone: 214-659-8814
kristina.williams@usdoj.gov

## CERTIFICATE OF SERVICE

I certify that on March 16, 2021, I filed this response with the clerk of court for the

U.S. District Court, Northern District of Texas, through the electronic filing system.  I

also certify that a copy of this response was sent to Corey Evan Robeson, Register

Number 57120-177, Leavenworth USP, P.O. Box 1000, Leavenworth, Kansas 66048, by

certified mail.

*/s/ Kristina M. Williams*
Kristina M. Williams
Assistant United States Attorney