IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| COREY EVAN ROBESON, | § | |
| #57120-177, | § | |
| MOVANT, | § | |
| | § | |
| V. | § | CIVIL CASE NO. 3:20-CV-385-D-BK |
| | § | (CRIMINAL CASE NO. 3:18-CR-6-D-52) |
| UNITED STATES OF AMERICA, | § | |
| RESPONDENT. | § | |

FINDINGS, CONCLUSIONS AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE

Pursuant to 28 U.S.C. § 636(b) and *Special Order 3*, Movant Corey Evan Robeson's *pro se* motion to vacate, set aside, or correct sentence under 28 U.S.C. § 2255 was referred to the undersigned United States magistrate judge for case management, including the issuance of findings and a recommended disposition where appropriate.  As detailed herein, the motion should be **DENIED**.

## I.  BACKGROUND

In 2018, Robeson pled guilty to conspiring to possess with intent to distribute a controlled substance and was sentenced to 210 months' imprisonment.  *United States v. Robeson*, No. 3:18-CR-6-D-52, Crim. Doc. 831 (N.D. Tex. October 18, 2018), *appeal dismissed*, No. 18-11421, Crim. Doc. 1354 (5th Cir. May 23, 2019).  On February 14, 2020, Robeson timely filed his § 2255 motion, asserting generally (1) three claims of ineffective assistance of counsel (IAC), (2) prosecutorial misconduct, and (3) bias and prejudice at sentencing.  Doc. 1 at 4-10.  The Court twice granted time to file a brief in support and, when Robeson failed to do so,

recommended that the § 2255 motion be summarily dismissed as vague, conclusory, and meritless.  Doc. 10.

The following day, Robeson filed a motion to amend his § 2255 motion, raising new IAC claims related to his guilty plea proceedings and the voluntariness of his guilty plea.  Doc. 11; Doc. 12 (Am./Suppl. § 2255 Mot.).  The Court thus withdrew its *Findings, Conclusions and Recommendation*, granted leave to amend, and ordered a response.  Doc. 14.  The Government subsequently filed a response opposing § 2255 relief and arguing that the new IAC claims were time barred and the remaining claims contained in both the original and supplemental motion failed on the merits.  Robeson did not file a reply.[1]

## II. ANALYSIS

As an initial matter, the Court considers whether Robeson's new IAC claims are timely.  As concluded in the previous Recommendation, Robeson's first § 2255, Doc. 1, was vague and conclusory.  Doc. 10.  Liberally construed, however, it can be interpreted to raise IAC at both the guilty plea and sentencing stage.  Thus, in an abundance of caution, the Court finds Robeson's amended claims relate back to the claims pled in his original § 2255 motion.  *See United States v. Alaniz*, 5 F.4th 632, 636 (5th Cir. 2021) ("[A] newly asserted claim can avoid a limitations dismissal if it 'relates back' to a timely claim by, as relevant here, 'arising out of' the same conduct 'set out—or attempted to be set out—in the original pleading.'" (cleaned up citations omitted)).

---

[1] Robeson's mother prepared and signed a *Motion for Extension of Time* to file a reply.  Doc. 22.  Because there was no indication that she is a lawyer, the Court struck the motion and *sua sponte* extended the time to reply to May 28, 2021.  Doc. 23.  As of the date of this *Recommendation*, however, Robeson has not filed a reply or sought an extension of time to do so.

*Legal Standards*

To be constitutionally valid, a guilty plea must be knowingly, voluntarily, and intelligently made.  *United States v. Hernandez,* 234 F.3d 252, 254 (5th Cir. 2000).  In determining the voluntariness of a plea, the court considers all relevant circumstances, including whether the defendant: (1) had notice of the charges against him; (2) understood the constitutional protections he was waiving; and (3) had access to competent counsel.  *United States v. Shepherd,* 880 F.3d 734, 740-41 (5th Cir. 2018); *see also Boykin v. Alabama,* 395 U.S. 238, 244 (1969) (finding that to be knowing and intelligent, the defendant must have "a full understanding of what the plea connotes and of its consequence").

When challenging the validity of his guilty plea, a defendant ordinarily may not refute his sworn testimony given at the plea hearing while under oath.  *United States v. Cervantes,* 132 F.3d 1106, 1110 (5th Cir. 1998).  A defendant must also overcome the presumption of regularity and "great evidentiary weight" accorded court records.  *United States v. Abreo,* 30 F.3d 29, 32 (5th Cir. 1994) (holding that a signed, unambiguous plea agreement "is accorded great evidentiary weight" when determining whether plea is entered voluntarily and knowingly).

In addition, to establish ineffective assistance of counsel, a movant must demonstrate counsel's performance was deficient and that the deficient performance prejudiced his defense.  *Strickland v. Washington,* 466 U.S. 668, 687-88 (1984).  Failure to establish either deficient performance or prejudice defeats the claim.  *Id*. at 697.

To prove the deficient-performance prong of the *Strickland* test, the movant must show that counsel made errors so serious that he or she was not functioning as the counsel guaranteed by the Sixth Amendment.  *Id*. at 687.  The proper measure of attorney performance is reasonableness under prevailing professional norms.  *Id*. at 688.  That said, "[j]udicial scrutiny of

counsel's performance must be highly deferential." *Id.* at 689.  There is a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance. *Id.*

Moreover, to demonstrate prejudice in the context of a guilty plea, the movant must show that "counsel's constitutionally ineffective performance affected the outcome of the plea process." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985).  The movant bears the burden of demonstrating that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Id.*  In the sentencing context, however, the movant must also demonstrate that his sentence was increased by the deficient performance of defense counsel. *Glover v. United States*, 531 U.S. 198, 200, 203-04 (2001).

**A.  Counsel's Failure to Investigate and Negotiate Plea**

Apparently dissatisfied with his sentence, Robeson asserts his defense counsel rendered ineffective assistance in "negotiating a plea and/or advising [him] to plead guilty without first reviewing [the Government's] discovery" or filing "discovery motions" to determine his potential sentencing exposure. Doc. 12 at 5-6.  He avers counsel led him to believe that he faced an imprisonment range of 70-to-87 months, rather than the 210-to-240 months subsequently calculated as the advisory Guidelines imprisonment range in the Presentence Report ("PSR") based on "proffer statements" made by confidential informants (CIs). Doc. 12 at 3-4.  According to Robeson, "the proffer statements made by the CIs attributed approximately 8,900 grams of U-47700 to [him]" increasing his "base offense level under the 'relevant conduct' provisions of the sentencing guidelines." *Id.*

Robeson also contends counsel failed to adequately investigate his sentencing exposure. He criticizes counsel for (1) not "obtain[ing] discovery [that] contained statements and evidence

that directly determined [Robeson's] sentence" and (2) "enter[ing] into a standard stipulated discovery without [Robeson's] consent." Doc. 12 at 5, 7. Robeson asserts:

> for a criminal defense attorney to negotiate a plea agreement on the pretense that defendant was facing 70-87 months, and advise defendant to plead guilty on that basis without reviewing what evidence the government had in its possession, was clearly deficient performance in that defendant received a sentence of nearly three-fold the sentence he believed he would receive based on counsel's advise [sic]."

Doc. 12 at 6. Further, Robeson avers he would not have pled guilty and would have insisted on proceeding to trial had he been advised about the correct guideline range. Doc. 12 at 6-7.

However, Robeson's sworn statements at rearraignment contradict his current assertions that his plea was induced by misinformation regarding his sentence. At rearraignment, the Court thoroughly cautioned Robeson that he could not rely on counsel's opinion about the advisory guideline range and that only the Court would be able to determine the guideline range after considering the PSR and any objections. Crim. Doc. 1030 at 11-13. Further, Robeson confirmed under oath his understanding that by pleading guilty he would be subject to "a maximum period of imprisonment of 20 years." Crim. Doc. 1030 at 9. By his *Plea Agreement*—which he likewise confirmed under oath that he signed only after reading it carefully and discussing it with his counsel—Robinson also confirmed his understanding that (1) the Court would determine the sentence after considering the advisory Sentencing Guidelines, (2) no one, including defense counsel, "can predict in advance what [his] sentence [would] be," and (3) the Court, in its discretion, could sentence Robeson up to the statutory maximum penalty. Crim. Doc. 1030 at 6, 11-14.

Additionally, Robeson assured the Court that his plea was not induced by promises or assurances of any kind. Crim. Doc. 1030 at 7, 11. He also affirmed that he was fully satisfied

with his counsel's advice and representation.  Crim. Doc. 1030 at 6.

Moreover, Robeson had ample time—more than three months between rearraignment and his sentencing hearing—to advise the Court that his guilty plea was involuntary or that he was dissatisfied with defense counsel's conduct and purported misleading statements about his guideline range, but he did not do so.  Similarly at sentencing, Robeson voiced no objection about the voluntariness of his guilty plea or his counsel's advice and allegedly deficient performance.  Indeed, when given the opportunity to address the court *after* the court overruled counsel's objection to the drug quantity being increased on additional weight gleaned entirely from unindicted co-conspirators' statements, Robeson admitted his guilt and to a severe opioid addiction that fueled his need to obtain more drugs.  Crim. Doc. 1033 at 32-35.  During his allocution Robeson disputed the drug quantity calculated in the PSR, stating that he (1) was "floored . . . by the extreme exaggerated amount of weight I'm responsible for in my PSR," (2) "would never exploit other people's weaknesses or addictions to opioids at such a level that I'm being accused of," and (3) "can't even fathom benefiting four million dollars or even a quarter of that in year."  Crim. Doc. 1033 at 34.  Robeson also apologized, and asked for leniency.  Crim. Doc. 1033 at 35.  But again, he never suggested that his guilty plea was the result of misinformation or erroneous advice.  These circumstances strongly suggest Robeson's claims are driven by "buyer's remorse" rather than any defect in the guilty plea procedure.

In addition, Robeson's reliance on *United States v. Gordon*, 156 F.3d 376, 381 (2d Cir. 1998) and *United States v. Hanson*, 339 F.3d 983, 990 (D.C. Cir. 2003), in support of his argument that his guilty plea was not voluntary is misplaced.  Doc. 12 at 7.  Unlike the defendant in *Gordon*, it is undisputed that Robeson knew his maximum statutory sentencing exposure was 20 years.  *See* Crim. Doc. 1030 at 9-10; *Gordon*, 156 F.3d at 381.  Likewise, in contrast to

*Hanson*, where counsel neglected to consider the career offender provision, Robeson does not allege that his counsel's estimated sentencing exposure was "a plainly incorrect estimate of the likely sentence due to ignorance of applicable law of which he should have been aware." *Hanson*, 339 F.3d at 990 ("The government does not dispute that [counsel's] failure to take into account the career offender provisions . . . was constitutionally deficient"); *see also United States v. Grammas*, 376 F.3d 433, 439 (5th Cir. 2004) (finding counsel miscalculated his client's sentencing exposure because he was unfamiliar with the Guidelines, he admitted using the incorrect section of the Guidelines, and his argument showed his overall lack of understanding).

In sum, Robeson presents only self-serving, *post hoc* assertions—not "contemporaneous evidence"— that he would not have pled guilty and would have gone to trial but for counsel's supposed projections about the sentencing guideline range.  And again, such statements are belied by the record and insufficient to contradict Robeson's testimony at rearraignment.  *Lee v. United States*, ___ U.S. ___, 137 S. Ct. 1958, 1967 (2017) ("Courts should not upset a plea solely because of *post hoc* assertions from a defendant about how he would have pleaded but for his attorney's deficiencies.  Judges should instead look to contemporaneous evidence to substantiate a defendant's expressed preferences."); *United States v. Crain*, 877 F.3d 637, 650 (5th Cir. 2017) (explaining that "self-serving post hoc assertions about how [the defendant] would have pled" do not negate contemporaneous comments at the plea hearing).

As stated previously, sworn statements made in open court are entitled to a strong presumption of truthfulness.  *United States v. Lampaziani*, 251 F.3d 519, 524 (5th Cir. 2001) (citing *Blackledge v. Allison*, 431 U.S. 63, 74 (1977)).  Consequently, a defendant will not be permitted to contradict testimony given under oath at arraignment and sentencing.  *See United States v. Cervantes*, 132 F.3d 1106, 1110 (5th Cir. 1998) (requiring movant to produce

"independent indicia of the likely merit of [his] allegations" to overcome re-arraignment testimony and plea agreement, which refuted his allegations); *United States v. Guzman*, 2021 WL 2610124, at *3 (5th Cir. Oct. 6, 2021) (per curiam) (rejecting *post hoc* assertion that the defendant would have gone to trial but for counsel's alleged errors based on defendant's sworn statements at re-arraignment and sentencing).

Lastly, Robeson's assertion that through discovery counsel could have more accurately predicted his drug quantity and resulting Guidelines sentencing exposure is flawed, vague and conclusory. Doc. 12 at 6-7. Also, he presents the unsupported claim that counsel "entered into a standard stipulated discovery agreement" without his consent. Doc. 1 at 7. "Under *Strickland*, an attorney has a duty to make reasonable investigation, but a petitioner 'who alleges a failure to investigate on the part of his counsel must allege with specificity what the investigation would have revealed and how it would have altered the outcome of the trial.'" *United States. v. Bernard*, 762 F.3d 467, 472 (5th Cir. 2014) (citations omitted). Robeson fails to meet this basic standard. Stated another way, he does not allege, much less demonstrate, with specificity what the investigation would have revealed and how it would have benefitted him. *See United States v. Curtis*, 769 F.3d 271, 276-78 (5th Cir. 2014) (per curiam).

Moreover, as discussed in detail *supra*, Robeson knowingly and voluntarily pled guilty. Other than his conclusory and self-serving statements, there is no evidence in the record that his plea was in any way due to his attorney's failure to investigate and adequately estimate his guideline sentencing range. Indeed, Movant fails to plausibly allege or demonstrate that counsel failed to investigate or correctly estimate his sentencing exposure under the Guidelines.

For the foregoing reasons, the Court concludes that Robeson has failed to establish that his guilty plea was unknowing and involuntary due to counsel's allegedly deficient performance

or that he was prejudiced as a result of the same.  Thus, Robeson's claims fail.

### B.  Counsel's Failure to Move to Withdraw the Guilty Plea

Robeson's contention that counsel was ineffective for failing to move to withdraw his guilty plea likewise fails.  Robeson has not shown that such a motion likely would have been granted.  A district court must consider the following seven factors when a criminal defendant who has pled guilty seeks to withdraw his plea: (1) whether the defendant has asserted his innocence; (2) whether withdrawal would prejudice the Government; (3) whether the defendant has delayed in filing his withdrawal motion; (4) whether withdrawal would substantially inconvenience the court; (5) whether close assistance of counsel was available; (6) whether the original plea was knowing and voluntary; and (7) whether withdrawal would waste judicial resources.  *United States v. Carr*, 740 F.2d 339, 343-44 (5th Cir. 1984).

While Robeson disputes the additional drug quantity attributed to him in the PSR, he has not asserted, much less established his innocence, the involuntariness of his plea, or that he was denied close assistance of counsel at all stages.  In addition, a motion to withdraw would have wasted judicial resources, as he evidently would not have filed it until after the PSR was filed on September 7, 2018—over two months after he pled guilty—and only about month before his October 18, 2018 sentencing.  Doc. 12 at 7-8.  Indeed, there is nothing in the record (including the transcript of the sentencing hearing) to suggest that Robeson ever indicated a desire to withdraw his guilty plea.  Thus, this IAC claim also fails.

### C.  Counsel's Failure to Challenge Facts Used to Calculate Sentence

Next, Robeson complains counsel was ineffective in challenging "facts used to determine [his] sentence."  Doc. 1 at 4.  His assertion is again vague and conclusory.  Presumably Robeson refers to the drug-quantity calculation, and overlooks that counsel indeed filed objections to the

Page 9 of 13

PSR calculations and presented arguments at the sentencing hearing. Crim. Doc. 753 at 1-5; Crim. Doc. 1033 at 4-6, 26-27.  That defense counsel was unsuccessful in his efforts does not equate to ineffective assistance.  *See Youngblood v. Maggio*, 696 F.2d 407, 410 (5th Cir. 1983) (per curiam) (holding unsuccessful efforts do not constitute ineffective assistance of counsel). Moreover, Robeson wholly fails to indicate how he was prejudiced—that is, how counsel's actions resulted in an increase in his sentence.  *See Glover*, 531 U.S. at 200, 203-04.  Therefore, Robeson's IAC claim at sentencing has no merit.

### D.  Prosecutorial Misconduct

Robeson contends "the prosecutor withheld and restricted the discovery and evidence that directly determined [his] sentence," in violation of "Rule 16 and *Brady*." Doc. 1 at 8-9.  As previously noted, he adds the Government neglected to divulge proffer statements made by CIs, which Probation subsequently used to calculate his drug-quantity and enhancements and increase his sentencing range—from 70-87 months as his counsel supposedly predicted, to 210-262 months as calculated in the PSR. Doc. 12 at 3-4.  Robeson belatedly suggests that, if he had obtained this supposed evidence and counsel had adequately counseled him of its adverse impact on his sentencing exposure, he would not have pled guilty. Doc. 12 at 3-5.

However, having failed to raise this argument on direct appeal, Robeson's claim is procedurally defaulted absent a showing of both (1) cause excusing his procedural default and (2) actual prejudice resulting from the error. *United States v. Logan*, 135 F.3d 353, 355 (5th Cir. 1998) (citing *United States v. Frady*, 456 U.S. 152, 168 (1982)); *United States v. Alanis*, 88 F. App'x 15, 22 (5th Cir. 2004) (per curiam) (finding prosecutorial misconduct claim must first be raised on direct appeal).  An exception to the cause and prejudice requirement is reserved for the "extraordinary case . . . in which a constitutional violation has probably resulted in the conviction

of one who is actually innocent." *United States v. Shaid*, 937 F.2d 228, 232 (5th Cir. 1991)

(quoting *Murray v. Carrier*, 477 U.S. 478, 496 (1986)).

 That is not the case here, as Robeson does not allege anything that would meet either the

cause and prejudice or the actual innocence requirements to excuse his failure to raise

prosecutorial misconduct on direct appeal.  In his original § 2255 motion, he merely states that

he "did not fully understand at the time [of the direct appeal] that the prosecutor actually

withheld and restricted the discovery and evidence that directly determined [the] sentence."

Doc. 1 at 9.  But Robeson's allegation is conclusory and, significantly, his amended § 2255

motion is silent about his supposed lack of understanding.  This claim is therefore procedurally

barred.

 Moreover, by his voluntary and knowing guilty plea—which, as discussed *supra*, is

supported by the record—Robeson waived his right to challenge any non-jurisdictional defects,

including any prosecutorial misconduct and *Brady* violations.  *See United States v. Gunselman*,

643 F. App'x 348, 354 (5th Cir. 2016) (per curiam) (waiving prosecutorial misconduct claim

(citing *Murray v. Collins*, 981 F.2d 1255, 1992 WL 387015, at \*3 (5th Cir. 1992) (per curiam));

*United States v. Conroy*, 567 F.3d 174, 178-79 (5th Cir. 2009) (per curiam) (waiving *Brady*

claim).

**E.  Court's Bias Claim**

 Lastly, Robeson argues the district judge's decision to overrule his hearsay objection at

sentencing demonstrated undue bias against him and prevented him from presenting an adequate

defense and "newly discovered evidence."  Doc. 1 at 10.  He thus requests that the district judge

recuse himself from determining the instant § 2255 motion.  *Id.*  Without regard to the veracity

of Robeson's allegations, they plainly fail to establish a basis for recusal under 28 U.S.C. §

455(a) or 28 U.S.C. § 144.  *See United States v. MMR Corp.*, 954 F.2d 1040, 1045 (5th Cir. 1992) ("[A]dverse rulings in a case are not an adequate basis for demanding recusal." (cited cases omitted)).  Nor do such allegations even suggest that the Court's impartiality in this matter might reasonably be questioned.  *Liteky v. United States*, 510 U.S. 540, 552 (1994).  Therefore, Robeson's request for recusal should be denied.

## III.    EVIDENTIARY HEARING

In his amended § 2255 motion, Robeson requests an evidentiary hearing to "present testimony and evidence in support of his claims."  Doc. 12 at 8.  However, "[w]hen the files and records of a case make manifest the lack of merit of a Section 2255 [motion], the trial court is not required to hold an evidentiary hearing."  *United States v. Hughes*, 635 F.2d 449, 451 (5th Cir. 1981); *see also United States v. Reed*, 719 F.3d 369, 373-74 (5th Cir. 2013) ("A defendant is entitled to an evidentiary hearing on his § 2255 motion only if he presents 'independent indicia of the likely merit of [his] allegations.'" (quoting *United States v. Cavitt*, 550 F.3d 430, 442 (5th Cir. 2008))).  Because Robeson's claims lack merit for reasons wholly supported by the record, as previously noted, no evidentiary hearing is required.  *See United States v. McClinton*, 782 F. App'x 312, 314-15 (5th Cir. 2019) (per curiam) (affirming denial of evidentiary hearing where "contemporaneous evidence" at rearraignment conclusively negated movant's *post hoc* claims).

## IV.     CONCLUSION

For the foregoing reasons, Robeson's § 2255 motion should be **DENIED**, and this case should be **DISMISSED WITH PREJUDICE**.

**SO RECOMMENDED** on November 18, 2021.


RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE


### INSTRUCTIONS FOR SERVICE AND
### NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of this report and recommendation will be served on all parties in the manner provided by law.  Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy.  *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b).  An objection must identify the finding or recommendation to which objection is made, the basis for the objection, and the place in the magistrate judge's report and recommendation the disputed determination is found.  An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific.  Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error.  *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996), *modified by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections to 14 days).